44521. TATE v. TEACHERS RETIREMENT SYSTEM OF
GEORGIA et al.
(359 SE2d 649)

CLARKE, Presiding Justice.

Dr. Horace Tate retired January 1, 1983, from his position as Executive Secretary Emeritus of the GAE (Georgia Association of Educators). He had held this position for one year. The Teachers Retirement System (TRS) calculated his retirement benefits according to a statutory formula based on years of creditable service and the highest average salary over a two-year period. At the time of his retirement, Dr. Tate had 39⅔ years of creditable service. Dr. Tate has not been a public employee or public officer since 1961 except for service as a legislator which is not relevant to his retirement benefits. A large part of his creditable service came from years as an employee of GAE or its predecessors, private entities. However, throughout his career Dr. Tate has made contributions to TRS and has been a member of TRS. The statute governing TRS was amended in 1984 so that new members of GAE are not teachers within the meaning of the statute. OCGA § 47-3-1. Based upon a 1981 salary of $49,736.35 and a 1982 salary of $75,564, including GAE's 6% contribution to TRS in 1982, TRS calculated his monthly retirement benefits as $4,000.54.

Following publication in June 1983 of a newspaper article which alleged that Dr. Tate's salary had been inflated by compressing into one year his remaining time under a three-year contract with GAE, TRS investigated his benefits and sought the opinion of the Attorney General, who issued an opinion critical of the benefits. Op. Att'y Gen. 84-13. At hearings before the TRS Board Dr. Tate was allowed to present testimony. In a follow-up letter after the hearings, the Attorney General did not alter his earlier opinion.

In May 1984, the Board of Trustees of the TRS voted to reduce Dr. Tate's benefits by $692.83 per month and to recover any overpayment from him. Dr. Tate brought the present action for declaratory and injunctive relief, alleging that the TRS had no authority to recalculate his benefits, that the benefits as originally approved were vested, and that the actions of the TRS violated his constitutional rights of equal protection and due process and impaired his contract rights. The trial court granted summary judgment to the defendants. The trial court concluded that the higher 1982 salary reflected a buy-

out of Dr. Tate's existing contract, not compensation for services rendered during 1982.

1. Dr. Tate argues that TRS had no statutory authority to review the benefits once conferred. The trial court found that the authority was implicit in OCGA § 47-3-141 (b) and that to give Dr. Tate and the GAE unfettered authority to negotiate a contract which would be binding on the TRS would be an unconstitutional delegation of authority over public funds. We agree. OCGA § 47-3-141 (b) provides for correction of errors which result in payment of benefits which are less or greater than a member or beneficiary is entitled to receive.

The more important question which he raises is whether the constitutional guarantee against impairment of contracts has been violated. The answer to this question rests on a determination whether Dr. Tate bargained for retirement benefits based on the last year's salary being inflated. We find that he could not have bargained for retirement benefits at the rate initially set because the salary upon which they were based was not "regular compensation payable to a member for his full normal working time" within the meaning of OCGA § 47-3-1 (11). We agree with the analysis of the Attorney General in Op. Att'y Gen. 84-13 that the plain meaning of the statute is that in order for the compensation to be considered for purposes of the calculation, it must be regular compensation earned for full normal working time. This does not include compensation paid to buy out a three-year contract. There is no vested right to benefits which one was never entitled to receive. Cf. *Bullard v. Holland*, 184 Ga. 788 (193 SE 586) (1937). Therefore, retirement benefits based on the inflated compensation for the last year of service could not have been the basis of the bargain which resulted in Dr. Tate's final contract with GAE. Appellant argues that he was entitled to rely upon the board's not looking behind the employer's certification of the amount of his last two years' salary because the board customarily accepted the employer's certification. He insists that the board's looking behind the certification was in the nature of a retroactive policy change which impaired his contract rights. However, the record does not show that the board had a firm policy of never questioning the certification. Further, the principle of *Bullard v. Holland*, supra, that one does not acquire a vested right to benefits one is not entitled to receive would hold true in regard to the policy toward certification. An employee would not be entitled to rely upon the board's blindly accepting an employer's certification. It is well settled that "Powers of all public officers are defined by law and all persons must take notice thereof. The public may not be estopped by the acts of any officer done in the exercise of an unconferred power." OCGA § 45-6-5. See *McCallum v. Almand*, 213 Ga. 701 (100 SE2d 924) (1957); *Drost v. Robinson*, 194 Ga. 703 (22 SE2d 475) (1942). The TRS is a public

body. OCGA § 47-3-1 et seq.

2. Dr. Tate contends that the TRS' decision to consider his 1982 salary as being comparable to his 1981 salary for retirement benefit purposes was arbitrary and capricious. The trial court found that his duties had decreased substantially during the last year of his service, that he rarely came to the office, that his successor as President of GAE assigned only two tasks to him during 1982, and that the evidence would show that he was a part-time employee during 1982. The court found that the 1982 salary did not reflect services to be rendered during 1982 but, rather, a contract buy-out. Under these facts, the decision of the TRS to consider the 1982 salary as comparable to the 1981 salary was not arbitrary or capricious.

3. The allegations that the trial court erred in considering evidence that was not before the TRS at Dr. Tate's hearing and that the court erred in considering parol evidence are without merit. The action from which the present appeal is taken was not an appeal from an administrative decision but was an original action for injunctive and declaratory relief filed in the trial court. Consequently, the hearing of original evidence was mandated.

The parol evidence rule was not involved in the trial of this case because the evidence complained of was not presented to explain or vary the written terms of Dr. Tate's contract. The evidence was presented to explain the intention of the parties in regard to the contract for the purpose of determining whether the calculation of benefits by the TRS was based on earned income. The other trial error alleged, the trial court's refusal to admit certain evidence as to the retirement benefits afforded other employees, is similarly without merit. Dr. Tate did not show that his situation was analogous to that of the persons whose records comprised the exhibit. He did not refute the testimony of a witness for the TRS that his was the only contract buy-out situation which has ever come before the TRS for consideration.

4. Dr. Tate is not entitled to attorney fees or expenses of litigation pursuant to 42 USC § 1983 because these are awarded only to a prevailing plaintiff in a civil rights action. Dr. Tate has not prevailed.

5. Although we have found that the reduction in future benefits to Dr. Tate did not violate his constitutional right to protection against impairment of contract, we find no right to recapture benefits already paid. There has been no allegation of any fraud or deception on the part of Dr. Tate in reporting his salary for purposes of computation of benefits. Similarly, there was no clerical mistake on the part of the TRS, which made the payments under the mistaken impression that they were based on earned salary. Under the peculiar circumstances of this case, it would be unfair to now recapture benefits in which Dr. Tate has now acquired a vested interest. Consequently, we

hold that that portion of the trial court's order which requires the repayment of the overage should be reversed.

*Judgment affirmed in part and reversed in part. All the Justices concur.*

DECIDED SEPTEMBER 9, 1987.

*Hurt, Richardson, Garner, Todd & Cadenhead, Robert R. Richardson, Stephen E. O'Day, Penelope B. Rundle,* for appellant.

*Michael J. Bowers, Attorney General, Carl C. Jones, Senior Assistant Attorney General,* for appellees.