A09A0020. GRANGE MUTUAL CASUALTY COMPANY et al.
v. SNIPES et al.
(680 SE2d 438)

MIKELL, Judge.

This is a dispute concerning insurance coverage for an incident that occurred on January 20, 2004, at the sugar refinery owned by Imperial-Savannah LP ("Imperial") in Port Wentworth. On that date, Donald Snipes, an Imperial employee, lost control of a sledgehammer, which struck and injured Wayman Levi Lanier, who was working at the refinery in the course and scope of his employment with Savannah Bridge Company, Inc. ("Savannah Bridge"). Lanier sued Snipes and Imperial,[1] who, in turn, filed a third-party complaint against Grange Mutual Casualty Insurance Company ("Grange") and Savannah Bridge. In the third-party complaint, Snipes and Imperial claimed that Imperial was an "additional insured" under Savannah Bridge's commercial general liability ("CGL") insurance policy with Grange. Snipes and Imperial moved for partial summary judgment on the issue of their entitlement to coverage and a defense as additional insureds under the Grange policy. The trial court granted the motion. Grange and Savannah Bridge appeal, contending that the trial court erred because questions of fact remain regarding the identity of the additional insured named in the policy as well as whether the additional insured timely elected coverage under the policy. We disagree and affirm.

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.[2]

So viewed, the record demonstrates the following facts. Savan-

---

[1] Lanier filed suit on January 11, 2006, naming as defendants Snipes, Imperial Sugar Company, Savannah Foods & Industries, Inc., and Savannah Sugar Refining Corporation. The corporate defendants were not the proper parties, and by order dated September 6, 2007, Imperial was substituted as defendant.

[2] (Citations and footnotes omitted.) *BBL-McCarthy, LLC v. Baldwin Paving Co.*, 285 Ga. App. 494-495 (646 SE2d 682) (2007).

nah Bridge supplied workers to Imperial through an "Independent Contractor Agreement" ("Agreement") which became effective on November 30, 1999. The Agreement required Savannah Bridge to purchase and maintain a CGL policy naming Imperial as an additional insured. The Agreement also required Savannah Bridge to "indemnify, defend and hold harmless Imperial-Savannah . . . from and against any and all actions . . . for bodily injury . . . sustained by any person . . . if such . . . injury . . . was in any way connected with the services provided under this Agreement." The "initial term" of the Agreement was three years, and, unless terminated by either party, "renew[ed] for a subsequent one (1) year term."

Savannah Bridge obtained CGL coverage from Grange. The policy in the record is a renewal policy that was in effect on the date of Lanier's injury. Savannah Bridge is the named insured, and there are two endorsements naming "Imperial-Savannah & Industries, Inc." as an additional insured. The certificate of insurance names "Savannah Sugar Refinery" as the certificate holder.

By letter dated May 24, 2006, Imperial and Snipes tendered the defense of Lanier's suit to Savannah Bridge, referencing its obligations under the Agreement. Grange, having received notice of the tender, responded on September 20, 2006, stating that it would not provide indemnification and a defense because the Agreement had expired. Imperial and Snipes tendered the defense directly to Grange on April 27, 2007, indicating that they had received the Grange policy showing Imperial as an additional insured ten days earlier in response to a subpoena. On this occasion, Grange responded by asserting that there was no coverage because Imperial did not timely elect coverage under the policy.

1. Grange and Savannah Bridge contend that the trial court erred in granting summary judgment to Imperial and Snipes on the issue of whether they timely elected coverage under Grange's policy. We disagree.

Under Georgia law, a defendant, such as Imperial, who may be entitled to be an additional insured under an insurance policy must "elect" coverage by forwarding a copy of the complaint to the insurer, here Grange.[3] "The purpose of notice is to enable the insurer to inform itself promptly concerning the accident, so that it may

---

[3] Id. at 499 (1) (b); *Adwater v. Ga. Ins. Co.*, 170 Ga. App. 29, 31 (316 SE2d 2) (1984) (physical precedent only); *Mattison v. Travelers Indem. Co.*, 167 Ga. App. 521, 525 (3) (307 SE2d 39) (1983); *Leventhal v. American Bankers Ins. Co. of Fla.*, 159 Ga. App. 104, 105-106 (4) (283 SE2d 3) (1981); *Southeastern Stages v. Gen. Fire & Cas. Co.*, 151 Ga. App. 487, 488 (1) (260 SE2d 399) (1979); *Hicks v. Continental Ins. Co.*, 146 Ga. App. 124, 125 (245 SE2d 482) (1978); *Ballew v. State Farm Mut. Auto. Ins. Co.*, 122 Ga. App. 417, 418-419 (177 SE2d 172) (1970); *Ericson v. Hill*, 109 Ga. App. 759, 761-762 (1) (137 SE2d 374) (1964).

investigate the circumstances, prepare for a defense, if necessary, or be advised whether it is prudent to settle any claim arising there-from."[4] In the case at bar, the underlying incident occurred on January 20, 2004. Lanier filed suit on January 11, 2006, but he did not correctly name Imperial as the corporate defendant until September 7, 2006. By that time, Imperial and Snipes had already tendered the defense to Savannah Bridge, on May 24, 2006. Grange responded on September 20, 2006. Imperial filed its answer to Lanier's complaint on September 27, 2006. Depositions were taken beginning on June 27, 2006. Discovery was extended several times prior to the filing of the third-party complaint; the final extension was granted until June 19, 2007. The trial court concluded that under these facts, Imperial and Snipes's election of coverage was timely as a matter of law.

Grange argues that a question of fact remains as to whether Imperial and Snipes, as putative additional insureds, complied with the condition precedent to coverage regarding timeliness.[5] In this regard, one of the pertinent policy provisions states that if suit is brought against "any insured," "you and any other involved insured" must "immediately send [Grange] copies of any demands, notices, summonses or legal papers received in connection with the . . . suit." But the undisputed evidence shows that Imperial and Snipes, the putative additional insureds, tendered the defense over three months before Imperial was properly named as a defendant. Grange and Savannah Bridge have not demonstrated prejudice to their defense.[6] Under these circumstances, we agree with the trial court's ruling that Imperial and Snipes timely elected coverage as a matter of law.[7]

2. Grange and Savannah Bridge further contend that the trial court erred in granting summary judgment to Imperial and Snipes because genuine issues of material fact remain regarding the identity of the additional insured named in the policy. We disagree.

An insurance policy is governed by the ordinary rules of contract construction,[8] and the cardinal rule of construction is to ascertain

---

[4] (Citation omitted.) *Public Nat. Ins. Co. v. Wheat*, 100 Ga. App. 695, 698 (3) (112 SE2d 194) (1959). Accord *Mattison*, supra.

[5] See, e.g., *Southern Trust Ins. Co. v. Clark*, 148 Ga. App. 579, 582 (1) (251 SE2d 823) (1978) (generally, as between insurer and insured, whether insured timely complied with policy's notice provision is a question of fact).

[6] See *BBL-McCarthy, LLC*, supra; *Leventhal*, supra at 108 (4) (considering as factors insurer's timely receipt of notice of incident and suit, relationship between defense of named insured and defense of named employee, and insurer's failure to demonstrate prejudice to defense by employee's failure to forward suit papers timely).

[7] See *Leventhal*, supra ("each case should be decided under its own facts").

[8] *Progressive Preferred Ins. Co. v. Brown*, 261 Ga. 837, 838 (1) (413 SE2d 430) (1992).

the intent of the parties.[9] In discerning the parties' intent, "the whole instrument should be considered together, along with the surrounding circumstances."[10] Whether the contract is ambiguous is a matter of law for the court to decide.[11] Moreover, "even ambiguous contracts are to be construed by the court unless an ambiguity remains after application of applicable rules of construction."[12]

In the case at bar, the certificate of insurance names "Savannah Sugar Refinery" as the certificate holder, while the endorsements on the renewal policy name "Imperial-Savannah & Industries, Inc." as an additional insured. This creates an ambiguity in the insurance policy. Extrinsic evidence may be considered to explain an ambiguity in an insurance contract.[13] Here, Scott Glidewell, Imperial's risk manager, testified by affidavit that "[w]ithin the Imperial Sugar family of companies, there has never been an entity known as 'Imperial-Savannah & Industries, Inc.'" To interpret the policy as insuring no entity at all would work a forfeiture and thus, would violate the rule that "[a]n insurance policy is construed liberally to provide coverage and avoid forfeitures."[14] Accordingly, we consider the circumstances surrounding the renewal of the policy, including the Agreement, to glean the parties' intent.

The Agreement required Savannah Bridge to purchase and maintain a CGL policy naming "Imperial-Savannah LP" as an additional insured. The "initial term" of the Agreement was three years, beginning on November 30, 1999, and ending on November 30, 2002. The Agreement renewed "for a subsequent one (1) year term," or until November 30, 2003. Grange and Savannah Bridge contend that the Agreement expired on that date, so that it was not required to maintain CGL coverage on the date of the incident, January 20, 2004. But whether or not the Agreement expired before the date of the incident is not dispositive. The true issue is the parties' intention regarding the identity of the named additional insured at the time the policy was renewed. The renewal policy was issued on June 20, 2003, while the Agreement was still in force. At that time, Savannah Bridge was obligated to name "Imperial-Savannah LP" as an additional insured on the policy, and that policy remained in effect on the date of the loss. Adhering to the rule that

---

[9] Id.; see OCGA § 13-2-3.

[10] (Citation omitted.) *Brown*, supra. Accord *Lemieux v. Blue Cross &c. of Ga.*, 216 Ga. App. 230, 231 (453 SE2d 749) (1994).

[11] *Collier v. State Farm &c. Ins. Co.*, 249 Ga. App. 865, 866 (2) (549 SE2d 810) (2001).

[12] *Travelers Ins. Co. v. Blakey*, 255 Ga. 699, 700 (342 SE2d 308) (1986).

[13] See *Thomas v. American Global Ins. Co.*, 229 Ga. App. 107, 109 (2) (a) (493 SE2d 12) (1997).

[14] *Lemieux*, supra.

"any ambiguities in [an insurance] contract are strictly construed against the insurer as drafter of the document,"[15] we conclude that the evidence demonstrates as a matter of law that, when the policy was renewed, the parties intended to name Imperial as an additional insured on Grange's policy.[16] Accordingly, the trial court properly granted summary judgment to Imperial and Snipes on this issue.

*Judgment affirmed. Johnson, P. J., and Ellington, J., concur.*

DECIDED MAY 29, 2009 —
RECONSIDERATION DENIED JUNE 17, 2009 — ▮▮▮▮▮▮▮▮

*Brennan, Harris & Rominger, Edward R. Stabell III*, for appellants.

*Forbes, Foster & Pool, Morton G. Forbes, Johnny A. Foster, Jones & Smith, Bobby T. Jones, Brown, Rountree & Stewart, George H. Rountree*, for appellees.

---

[15] (Citation omitted.) *Staton v. State Farm Auto. Ins. Co.*, 294 Ga. App. 208, 213 (669 SE2d 164) (2008).

[16] Compare *Ryder Integrated Logistics v. BellSouth Telecommunications*, 277 Ga. App. 679, 686 (4) (b) (627 SE2d 358) (2006), rev'd on other grounds, 281 Ga. 736 (642 SE2d 695) (2007) (contract between the parties showed that they did not intend to name BellSouth as an additional insured on the excess policy procured by Ryder).